PHILIP KOERPER et al., Respondents, v. JOHN J. GLENNON, Archbishop of the City of St. Louis, Missouri, Appellant.

St. Louis Court of Appeals. Opinion Filed April 4, 1922.

1. PLEADING: Answer: Admissions: Cemeteries: Allegation in Answer Not Admission that Archbishop Operated Cemetery. In an action to recover damages for alleged interference by defendant's agents with a certain burial in a cemetery, an answer by defendant, admitting that he was archbishop of the diocese and owner of the land of the styled cemetery and that it was conducted under the name alleged, and that the undertaker conducted the interment so that defendant had no control of same, was not an admission that defendant had any control over, or connection with, the operation of the cemetery at any time.

2. TRIAL PRACTICE: Waiver: Demurrer to Evidence: Not Waived by Requesting Instruction to Meet Issues. A defendant is in court without his consent, and is allowed to shift his ground, if need

be, to meet the attack of his adversary, which attack he can in no way control, and does not waive his objection to the refusal of the court to give his peremptory instruction in the nature of a demurrer to the evidence by asking further instructions to meet those given on behalf of the plaintiff.

3. ——: ——: ——: **Not Waived by Admission in Motion for New Trial.** An admission made in defendant's motion for a new trial presented after verdict and judgment could in no wise, waive, cure, or effect the court's error in refusing to give the peremptory instruction asked by the defendant, there being no evidence in the record to connect defendant with the operation, maintenance, business or control of the cemetery, or any connection with the wrongs from which plaintiffs alleged they suffered.

4. **APPELLATE PRACTICE:** Reversals: Erroneous Refusal of Demurrer to Evidence: Cause Remanded. Where the trial court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence at the close of the whole case for which the judgment must be reversed, the judgment will not be reversd outright, but where substantial justice requires, the case will be remanded for a new trial.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Victor H. Falkenhainer,* Judge.

REVERSED AND REMANDED.

*Edw. V. P. Schneiderhahn* for appellant.

(1)    When the evidence furnishes no substantial support for the allegations of the petition then it is the duty of the court to instruct the jury to find for the defendant. It may be stated as an axiomatic rule that whenever a court or jury is left by the evidence in a situation where in order to find the ultimate fact alleged they must piece out the facts adduced with conjecture or supposition, the plaintiff must be held to have failed in his proof. Nicholas v. Evang. Deaconess Home, 281 Mo. 182; Kane v. Mo. Pac. R. R. Co., 251 Mo. 13; Goransson v. Ritner Conley Man. Co., 186 Mo. 300; Milliken v. Commission Co., 202 Mo. 637; Kennedy v. Met. St. Ry. Co., 128 Mo. App. 297.    (2)

It was the duty of the undertaker to deliver the burial permit to the sexton or person in charge of the place of burial, to-wit, St. Peter and Paul Cemetery, before interring or otherwise disposing of the body. Sections 5804 and 5806, R. S. 1919. (3) The carelessness and negligence of the undertaker, Geraghty, agent of the plaintiffs, and his violation of the State law in not first delivering the burial permit to the sexton of SS. Peter & Paul Cemetery, is in contemplation of law carelessness and negligence on the part of the plaintiff's and this was the proximate and efficient cause of whatever interruption of the interment there was. Absent the negligence and carelessness of the undertaker and his violation of law, the interruption could not have occurred. It was, therefore, the duty of the trial court to instruct the jury that under the law and the evidence, the plaintiffs could not recover. Hearon v. Himmelberger-Harrison Lbr. Co., 230 S. W. 661; Nugent v. Milling Co., 131 Mo. 241; Reithenbach v. Ellerbe, 115 Mo. 588; Stanley v. Railroad, 114 Mo. 606; Powell v. Richmond, 76 Mo. 80; Stegmann v. Gerber, 146 Mo. App. 104; Frauthenthal v. Gas Light Co., 67 Mo App. 1; Reed v. Railroad, 50 Mo. App. 505; Hicks v. Railroad, 46 Mo. App. 304. (4) Plaintiffs are not entitled in their instruction to submit a theory not warranted by the evidence. Instruction predicating recovery on fact not supported by evidence is error. Kendrick v. Harris, 171 Mo. App. 208; Small v. Ice & Fuel Co., 179 Mo. App. 456; Cowan v. Hydraulic Press Brick Co., 222 S. W. 924; Hearon v. Himmelberger-Harrison Lbr. Co., 224 S. W. 67. (5) (a) Punitive damages are recoverable only when the act from which plaintiff suffers injury partakes of the nature of a public as well as a private injury. There must be an intentional wrong. Lewis v. Jannoupoulo, 70 Mo. App. 325; Wingate v. Bunton, 193 Mo. App. 470; 17 Corpus Juris, Title Damages, p. 984; Clark v. Fairley, 30 Mo. App. 335; Ferguson v. Railroad Co., 177 S. W. 616. (b) As is evident from the characterization of the acts for which

exemplary damages may be recovered there must be
either malice, wantonness or oppression, fraud or gross
negligence or recklessness—a guilty intent on the part
of defendant is essential to charge him with exemplary
or punitive damages. 17 Corpus Juris, Title Damages,
p. 983. (a) Malice should be defined. Morgan v. Dur-
fee, 69 Mo. 469; Cody v. Gremmler, 121 Mo. App. 359;
Clark v. Fairley, 30 Mo. App. 335; McQuillen, Instruction
to Juries, sec. 1242. (b) The instruction given fol-
lowing Goetz v. Ambs (27 Mo. 28) states that malice
"means the intentional doing of a wrongful act with-
out just cause or excuse. This means that he had not
only intended to do the act which is ascertained to be
wrongful, but that defendant knew it was wrongful
when he did it." Peak v. Taubman, 251 Mo. 390, 430.
(c) Malice in this connection has been said to imply
not merely an unlawful or injurious act, but this do-
ing of an act conceived in a spirit of mischief or crim-
inal indifference to civil obligations. The act complained
of must partake of a criminal or wanton nature. 17 Cor-
pus Juris, Title Damages, p. 984. (d) Where an act
has been done in good faith, although it may result in
serious injury to defendant, there can be no recovery of
exemplary damages. . . . If defendant acted under
a mistaken sense of duty and without any evil intent
it is not a case for exemplary damages. 17 Corpus
Juris, Title Damages, p. 985. (7) (a) That the ver-
dict in an action for personal injuries was excessive
constitutes reversible error, as a matter of law, irre-
spective of the existence of passion or prejudice on the
part of the jury. Northam v. Railroad Co., 190 S. W. 576;
See also, Sperry v. Hurd, 267 Mo. 628. (b) If it clearly
appears that the verdict is excessive the appellate court
may set it aside on the ground that the jury was in-
fluenced by passion or misapprehended the instructions.
Barree v. City of Cape Girardeau, 112 S. W. 724. (8)
A public cemetery falls under the classification of pub-
lic or charitable uses. A public cemetery is one used
by the general community or neighborhood or church

A public cemetery is as much a public place as a court-house or a market. A public cemetery is a public charity and is classed as such both in the Constitution and statutes. Stewart v. Coshow, 238 Mo. 662; Tracy v. Bittle, 213 Mo. 302; Const. Missouri, sec. 6, art. x, exempting cemeteries from taxation. (9) Public policy favors provision for and maintenance of cemeteries and exempts charitable funds from execution for damages. Stewart v. Coshow, 238 Mo. 662; Sec. 10267, R. S. 1919, incorporation; Sec. 6, art. X, Const. Mo., exemption of cemeteries whatever extent from taxation; Sec. 1612, R. S. 1919, exemption of all burial grounds from attachment and execution like court-houses and other buildings of counties and municipalities. (10) Charities are not liable for the torts of agents or employees. Nicholas v. Evang. Deaconess Home, 281 Mo. 182; Whittaker v. St. Luke's Hospital, 137 Mo. App. 116; Adams v. University Hospital, 122 Mo. App. 675. (11) The case should be reversed without being remanded. Frauenthal v. Gas Light Co., 67 Mo. App. 1; Stegmann v. Gerber, 146 Mo. App. 104.

*Edw. A. Ferrenbach* and *Smith & Pearcy* for respondent.

(1) Punitve damages are recoverable in a case of this sort. Union Center Cemetery v. Alexander, 69 South. 251; Wright v. Hollywood Cemetery Corp., 112 Geo. 884. (2) A cemetery is not a public charity, as that term is used in the "Hospital" cases. Donnely v. Boston Catholic Cemetery Association, 146 Mass. 163. The owners of the lots are a limited number of persons. The general public cannot be beneficiaries as in the Hospital cases. (3) A cemetery corporation is liable for its negligence or the negligence of its officers and agents. 11 C. J., p. 64 sec. 34; Donnelly v. Boston Catholic Cemetery Association, 146 Mass. 163; East Hill Cemertery Co. v. Thompson, 53 Ind. App. 417; Long v. Rosedale Cemetery, 84 Fed. 135; Wright v. Holly-

wood Cemetery Corp., 112 Geo. 884; Union Center Cemetery v. Alexander, 69 So. 251; Barry v. Calvary Cemetery, 106 Mo. App. 358; Barry v. Calvary Cemetery Assn., 211 Mo. 105; Stewart v. Woodmere Cemetery (Mich.), 178 N. W. 654. If liable for negligence, certainly intentional acts create a liablity. (4) This verdict for punitive damages is not excessive. The humiliation to plaintiffs was great. The interference with the funeral in the manner shown by the evidence was wholly uncalled for, was boisterous, and was executed in a wanton way. In no case could the interment have been made and completed except by the defendant's agents, and the same result as was accomplished could have been accomplished if the defendant's agents had waited until after the friends, relatives and mourners had withdrawn from the grave. There was nothing accomplished by the interruption. There can be no excuse for it. (5) The trial court did not err in overruling appellant's demurrer to the evidence or in giving of plaintiff's instruction.

Daues, J.—This is an action to recover damages, actual and punitive, for alleged interference by defendant's agents with a certain burial in a cemetery in the city of St. Louis. At the trial before the court and a jury there was a verdict and judgment in favor of plaintiffs and against the defendant, the appellant herein, for $1 actual and $3000 punitive damages. After filing a motion for a new trial, and excepting to the overruling of same, appellant has duly perfected his appeal to this court.

The amended petition upon which the cause went to trial includes several defendants, to-wit: St. Peter's and St. Paul's Cemetery Association; Katherine Koerper. wife of Frank Koerper, deceased; the heirs of Frank Koerper, deceased: St. Peter 's and St.Paul's Cemetery, a voluntary and unincorporated association and organization; and John J. Glennon, Archbishop of the City of St. Louis, Missouri.

The petition alleges that "the St. Peter's and St. Paul's Cemetery Association is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, with its principal place of business in the city of St. Louis, Missouri. That the defendant St. Peter's and St. Pauls Cemetery is a voluntary and unincorporated association and organization, existing, known as, and operating and doing business and conducting a cemetary under the name of St. Peter's and St. Paul's Cemetary; that the defendant John J. Glennon is Archbishop of the Diocese of the city of St. Louis, Missouri, and the legal owner and holder of the title to the land occupied and operated by the defendants St. Peter's and St. Paul's Cemetery, and St. Peter's and St. Paul's Cemetery Association, a corporation;" that the defendant Katherine Koerper is a widow and a resident of the city of St. Louis, Missouri.

The petition then alleges, in substance, that plaintiffs are the children of Kreszentia Koerper, who died on August 23, 1918, and that she was entitled to have her remains buried in lot No. 30 of said cemetary; that plaintiffs made arrangements with the sexton of the cemetary for such burial after identifying the lot, and that the sexton caused the grave to be dug; that the funeral, on August 26, 1918, progressed to the point of actual interment, when it was interrupted by employees of the defendants and the funeral arrested. The sexton explained that defendant Katherine Koerper had objected to such burial on this said lot, and that for that reason the interment was stopped; that plaintiffs were thereafter compelled to remove the remains into a receiving vault in the cemetery, where same remained until September 4, 1918, at which time the body was buried in this grave which had been prepared on this lot.

Further allegations charge the acts of the defendants as having been wrongful and in wanton disregard of the rights and feelings of the plaintiffs, and to their great

humilation and grief. The prayer is for $1 actual and $5000 punitive damages.

In the separate answer of (appellant) defendant it is admitted "that he is Archbishop of the Archdiocese of St. Louis, as alleged in plaintiffs' petition, and that he is the owner of the land styled SS. Peter and Paul Cemetery, and that defendant admits that said cemetery is being conducted as such under said name."

The answer then denies generally the allegations in the petition. As a further answer, this defendant alleges that because a dispute existed between Katherine Koerper and the plaintiffs concerning the ownership of the grave lot, plaintiffs agreed, before the funeral, that in the event of a controversy over the right of burial, that the body should be kept in the receiving vault untill the controversy was settled; that the undertaker, acting for plaintiffs, failed to produce the necessary burial permit as required by law before such burial was attempted; that thereupon the sexton in charge of the cemetery sent a foreman to advise the undertaker of such failure to submit a burial permit, whereupon a conference was held and it was agreed that because of the protest the the body was to be temporarily placed in the receiving vault, from which it was later buried. This, in substance, is the answer of this defendant.

The reply is a general denial.

The evidence developed that two brothers, Lorenz and Frank Koerper many years ago purchased a burial lot in St. Peter's and St. Paul's Cemetary. When Lorenz Koerper died, many years ago, he was buried on this lot. At the death of his widow, Kreszentia Koerper, on August 23, 1918, a dispute arose between the heirs of Lorenz Koerper and the defendants, heirs of Frank Koerper, as to the right of the burial of Kreszentia Koerper on this lot. Plaintiffs, the children of said Kreszentia Koerper, went to the cemetery the day after her death to arrange for her burial. They met a Mr. Todt, who according to the testimony, was "superintendent of the

St. Peter's and St. Paul's Cemetery." Todt asked them, if they had a deed. Upon being told that they did not, he required them to get someone to identify them and also to identify the lot upon which they sought to bury the body of their mother. The next day they produced a letter which identified the plaintiffs, and the lot was also identified at that time. Plaintiffs' evidence is to the effect that the sexton told plaintiffs to go ahead with the funeral the next day; that on the morning of the next day Mr. Geraghty, the undertaker, called Mr. Todt, the sexton, by telephone, and was advised by the sexton that everything was in readiness for the interment at the cemetery; the grave had been dug by the regular grave diggers of the cemetery and was ready when the funeral arrived. At the grave the interment was interrupted by Joseph Berchler, a foreman or assistant sexton at the "St. Peter's and St. Paul's Cemetery," who, with waving hands ordered the funeral to be checked, saying in a loud voice, "You can't go ahead with the funeral. Mr. Todt wants to see you." Plaintiffs then went to the office of Todt , the sexton, who said: "There was a woman here and she won't let you go ahead with it. I don't want to get into trouble with, either one or the other party and you can't go ahead" Mr. Todt obdurately refusing to allow the burial to go ahead, the body was removed from within the grave, where it had been lowered and covered with flowers, and was placed in the receiving vault, from which it was afterwards interred. Plaintiffs all testified that they were greatly humiliated by the acts of the cemetery employees by the manner in which the burial was stopped.

At the close of plaintiffs' case, plaintiffs voluntarily dismissed the suit as to defendants St. Peter's and St. Paul's Cemetery Association, a corporation; St. Peter and St. Paul Cemetery, a voluntary association, and defendants the heir of Frank Koerper.

A demurrer to the evidence was interposed on behalf of the defendant Katherine Koerper, which was

209 M. A.—32

sustained by the court. The appellant at the same time asked the following instruction in the nature of a demmurrer, to-wit:

"The court instructs the jury that under the law and the evidence plaintiffs are not entitled to recover and your verdict must be for the defendant John J. Glennon (Archbishop of St. Louis)."

This instruction the court refused to allow, to which ruling the defendant saved his exceptions.

At the close of the whole case defendant again offered an instruction in the nature of a demurrer to the ev_idence, which the court refused to give, and to which action defendant has saved his exception. Same was assigned as error in the motion for a new trial, and is urged as error here on appeal.

We have read this record with care, both the abstract filed by appellant and the additional abstract of the respondent, and singular as it may appear, nowhere in the record evidence is appellant's name even mentioned, nor is there a single reference made in such evidence, directly or indirectly, to this defendant. There not only is no substantial evidence, but there is absolutely no evidence whatsoever in the record to connect the defendant John J. Glennon with this controversy, or with the acts of the cemetery employees for whose alleged tort the defendant is sought to be held responsible. So far as the evidence is concerned, there is no connection established between this defendant and the cemetery authorities by whatever name.

Counsel for respondents, as we recall, conceded with candor in his oral argument that no such connection would be found in the evidence. But it was there contended by learned counsel that the answer, the motion for new trial and defendant's instructions constitute an admission by the defendant that the cemetery was maintained or operated by him at the time mentioned in the petition, and that the defendant having offered and having been allowed instructions on the theory advanced

by Plaintiff, he thereby was bound to such theory and could not then depend on his own demurrer to the evidence challenging plaintiffs' theory of the sufficiency of all the evidence to make a case for plantiffs.

That portion of the answer so relied upon as an admission is as follows: "Defendant admits that he is Archbishop of the Diocese of St. Louis as alleged in plaintiffs' petition, and that he is owner of the land styled SS. Peter and Paul Cemetery, and that defendant admits that said cemetery is being conducted as such under said name." Special stress is laid on the concluding phrase in this paragraph, to-wit: "That said cemetery is being conducted as such under said name." This clause, as we understand it, means nothing more than that the cemetery is being conducted as such, that is to say, as such cemetery and under said name, to-wit, SS. Peter and Paul Cemetery. No other meaning can fairly be imposed on these words, in our opinion.

It is also said that the answer contains the allegation that the undertaker himself conducted the interment "so that this defendant had no control of same," and that this constitutes an admission that the Archbishop maintained and operated this cemetery, and consequently that the employees of such cemetery were his agents. This paragraph of the answer constitutes a denial of the petition that this defendant had any control over this particular burial. It is not an admission that defendant had any control over or connection with the operation of the cemetery at any time, and certainly at the time of this burial.

But it is argued that defendant asked and received an instruction (numbered 2) which meets the theory that defendant was conducting the cemetery under the name SS. Peter and Paul Cemetery. The instruction is very lengthy. It faces plaintiffs' only instruction asked and given, and is a converse of plaintiffs' instruction which defendant had to combat, after the court refused to give his instruction in the nature or a demurrer to the evidence.

It should be borne in mind that in the instant case appellant is the defendant, not the plaintiff, and that he demurred to the evidence, and at no stage of the proceedings has he abandoned such point.

The defendant by asking and receiving an instruction combatting the theory forced upon him by plaintiffs' instruction did not waive his objection to the refusal of the court to allow his peremptory instruction in the nature of a demurrer to the evidence at the close of the whole case.

Our Supreme Court in Everhart v. Bryson, 244 Mo. l. c. 516, 149 S. W. 307, through Judge FERRIS, speaking for the court en Banc, a very clear and erudite opinion, strikes the very center of this proposition. We quote at length therefrom, to-wit:

"It is settled by numerous decisions of this court that a *defendant* does not waive his objection to the re-refusal of the court to give his peremptory instruction in the nature of a demurrer to the evidence by asking further instructions to meet those given on behalf of the plaintiff. Should the same rule apply to the plaintiff regarding his peremptory instruction? It may be remarked in passing that this privilege extended to the defendant is not recognized in all jurisdictions. It is in the nature of an exception to the general doctrine of waiver and estoppel. Its recognition in this State is put upon the ground that the defendant does not come into court voluntarily, and cannot retreat therefrom. He is therefore allowed to shift his ground, if need be, to meet the attack of his adversary, which attack he can in no way control. On the other hand, the plaintiff is the moving party. He selects his method of attack. If one theory put forward by him, by his instructions, is denied by the court, he may retreat from the contest with his right in full force for a new attempt. Not so with the defendant. If, under these conditions, the plaintiff (his first theory being denied by the court) sees fit, to persist and try the case on a different theory

approved by the court, he must be held to have waived his objection to the ruling of the court on his first proposition.''

''It must be remembered that a defendant occupies a different attitude from his adversary, the plaintiff. The plaintiff brings the action. If the ruling is adverse he may take a nonsuit. Not so with the defendant. He is in court without his consent. The court may make any number of rulings that he may deem erroneous, but he cannot abandon the case; he is in court, and must remain until the cause is finished. He has a right to tender as many defenses as he has. If the court erroneously deny him one, he must avail himself as best he can of those remaining. He, however, advises the court and his adversary of his claim, and if he submits, as he is bound to do, to the ruling of the court, and tries his case in accordance with the judgment of the trial court, on what principal is he estopped from complaining of the action of the trial court and his adversary in forcing him to fight the battle upon the ground selected by them and at a great disadvantage to him? We see no element of estoppel in such a case.''

The opinion then quotes from Kenefick-Hammond Co. v. Fire Ins. Society, 205 Mo. l. c. 307, 103 S. W. 957, as follows:

''In construing rules of appellate practice in accordance with right reason regard must be had to the difference between the position occupied by a defendant and that occupied by a plaintiff. The plaintiff goes into court voluntarily; the defendant is 'lugged' in, that is, pulled in by the lugs, will ye, nill ye. The plaintiff goes up to battle on his own ground—he pitches the field.''

Observably, therefore, there is no merit in plaintiffs' position that defendant has waived his demurrer to the evidence by offering instruction No. 2 in a contest forced upon him by plaintiffs' theory of the case allowed by the court. Nor does the language of such instruction constitute an admission to supply a necessary element in plaintiffs' case.

With reference to the motion for new trial, paragraph 20 is as follows:

"Because the defendant, as Archbishop, owning and maintaining said cemetery a public and charitable use is not personally liable under the law to respond in damages in any such suit as is here brought by plaintiffs, nor is he liable under the law to be mulcted and punished in and by exemplary damages in any such suit."

This of course was presented after verdict and judgment, and same could in nowise waive, cure or affect the court's error in refusing to give the peremptory instruction asked for by the defendant. This complaint in the motion for new trial is addressed to the action of the court in sustaining the plaintiffs' theory of the case.

It is hardly necessary to state that unless there was substantial evidence in the case, adduced by either plaintiff or defendant, tending to show directly or by reasonable inference that defendant Glennon had some responsible connection with the commission of the tort complained of, then the court erred in permitting the case to go to the jury. We repeat, there is no evidence whatsoever in the record to connect this defendant with the operation, maintenance, business or control of the cemetery, nor any connection with the wrongs from which plaintiffs allege they suffered.

We cannot escape the conclusion then that the trial court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence at the close of the whole case, for which the judgment must be reversed.

Appellant earnestly argues that the judgment should be reversed outright. We do not so undrstand our duty. In the interest of substantial justice, and upon authority of Hake v. Buck's Stove & Range Co., 234 S. W. 1061, and cases there cited, we think the cause should be remanded.

Accordingly, the judgment is reversed and the cause remanded. *Allen, P. J.,* and *Becker, J.,* concur.