HELEN S. GIBBS, Appellant, v. GENERAL MOTORS CORPORATION, a Corporation, and RENDLEN MOTOR COMPANY, a Corporation.—No. 38105.—166 S. W. (2d) 575.

Division One, November 10, 1942.

Rehearing Denied, December 1, 1942.

*Douglas H. Jones* and *Barak T. Mattingly* for appellant.

*Wilton D. Chapman* for respondent General Motors Corporation.

*Joseph N. Hassett* and *Ernest E. Baker* for respondent Rendlen Motor Company.

BRADLEY, C.—Action to recover $15,000 for personal injuries. Separate demurrers to the petition were sustained; plaintiff declined to further plead; the cause was dismissed, and plaintiff appealed.

Plaintiff alleged that the Rendlen Company was a local dealer of Oldsmobiles, and that General Motors Corporation was the manufacturer of the Olds; that March 12, 1939, she purchased a new Oldsmobile sedan from the Rendlen Company; that on May 11, 1939, "she was driving her said Oldsmobile sedan, so purchased from defendant Rendlen Motor Company, on U. S. highway 61, about one mile south of Auburn, Missouri, in Lincoln County, on a two lane concrete road, which at that place was dry, straight and level for a long distance in each direction; that while so driving her said automobile and while exercising the highest degree of care on her part, plaintiff applied her foot to the brake pedal of her said automobile in the ordinary, usual and customary manner, with the intent and desire of causing the said automobile to slow down and slacken its speed, but that said automobile at said time and place, and without any fault on the part of the plaintiff, was then and there caused to slue violently to the left of said highway and into a violent head on collision with another automobile coming from the opposite direction, causing plaintiff to sustain" the injuries complained of.

Plaintiff further alleged that "her said automobile, at the time of said collision, had been driven only 1,530 miles from the time of its purchase new from defendant Rendlen Motor Company, and that during the two months intervening between the time of her said purchase to the time of said collision, she had had the car serviced and inspected by the said Rendlen Motor Company at the time intervals recommended by said defendant Rendlen Motor Company for such service and inspection, and had not had it serviced, worked on or changed in any manner by anyone else"; that the General Motors Corporation sold to the Rendlen Company the automobile she purchased, and "at all times had complete and exclusive control of said automobile until sold"; that it was sold to the Rendlen Company "for the purpose of resale"; that after she purchased said automobile it was "carefully handled by her and by all persons into whose hands it came", and that "said improper action of said automobile in swerving out of its course was not caused by the fault, negligence, or improper handling of said automobile on the part of any one into whose hands it came after leaving the possession of defendants"; that "the improper action of said automobile is swerving out of its course would not have occurred if due care had been used by defendants"; that "all the facts and circumstances of and concerning the manufacture" of said automobile were "exclusively within the knowledge of the defendants and not within the knowledge of plaintiff."

It is further alleged that said automobile "was defectively made, manufactured and assembled, thereby rendering the operation of said automobile dangerous and unsafe; that defendants had knowledge of such defects, or by the exercise of due care would have known of such defects in time to have remedied the same and thus and thereby have avoided the collision and injury and damage to plaintiff; that the defects were such that they could have been discovered by properly employed means of inspection; that said defendants manufactured an automobile which was intended for general use and that said defendants owed a duty to the general public and customers and to plaintiff in particular to so construct such automobile as not to be dangerous and unsafe; but said defendants defectively and unsafely constructed, assembled and adjusted the same so as to render said automobile imminently dangerous to life and limb; that plaintiff had no knowledge of said defects hereinabove mentioned; that proper tests would have disclosed that said automobile was defective and negligently and improperly manufactured, constructed, assembled and adjusted and was inherently dangerous when used for the purposes for which manufactured and sold, and that such defective condition was known or should have been known to said defendants by the exercise of reasonable care; but that notwithstanding such knowledge of such defects, defendants, by said sale, impliedly represented to plaintiff, the purchaser, that the said automobile was safe and dependable; that in addition to the implied warranty resulting from the manufacture and sale of automobile to be used by the general public upon the public highways of the State of Missouri and elsewhere, the said defendants advertised its said Oldsmobile automobiles as being dependable and reliable, free from defects in workmanship and material, including the automobile hereinbefore described as having been purchased by plaintiff, and the said defendants specifically warranted the said automobile when it was sold and delivered to plaintiff to be in a good mechanical state of repair without defects in workmanship and material; that by reason of such defective construction and such negligent acts on the part of defendants the collision and injury and damage to plaintiff were proximately caused."

Plaintiff contends (1) that the manufacturer of an automobile is liable to the ultimate purchaser for injuries due to a defect caused by negligence in its manufacture; (2) that a dealer, who sells a new automobile is liable to the purchaser for injuries due to defects discoverable by reasonable inspection; and (3) that a manufacturer or dealer who sells a new automobile to a purchaser, such as plaintiff, and the automobile is unfit for use and injury results, as plaintiff alleges, the res ipsa loquitur rule may be invoked in an action against the manufacturer and dealer to recover for such injury.

As supporting the first contention, plaintiff relies on the following, and other cases: Tayer v. York Ice Machinery Co., 342 Mo. 912, 119

S. W. (2d) 240; Shroder v. Barron-Dady Motor Mo. (Mo. Sup.), 111 S. W. (2d) 66; MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050; Johnson v. Cadillac Motor Car Co. (2d Cir.), 261 Fed. 878, 8 A. L. R. 1023; Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. (N. S.) 560; 9-10 Huddy on Automobiles, Sec 210; 7 Blashfield's Cyc. of Automobile Law and Practice (Permanent Ed.), Sec. 4811. See also, Goullon v. Ford Motor Co. (6th Cir.), 44 Fed. (2d) 310.

 In support of the second contention, plaintiff cites, among others, these authorities: Shroder v. Barron-Dady Motor Co., supra; Darks et al. v. Scudders-Gale Gro. Co., 146 Mo. App. 246, 130 S. W. 430; Arnold v. May Dept. Stores Co., 337 Mo. 727, 85 S. W. (2d) 748; Restatement of Torts, Sec. 402.

In support of the third contention plaintiff cites Harke v. Haase, 335 Mo. 1104, 75 S. W. (2d) 1001; Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S. W. 497; Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693; Tayer v. York Ice Machinery Corp., 342 Mo. 912, 119 S. W. (2d) 240; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S. W. (2d) 122; Kelly v. Laclede Real Estate & Inv. Co., 348 Mo. 407, 155 S. W. (2d) 90, 96; Garfinkel v. B. Nugent & Bro. Dry Goods Co. (Mo. App.), 25 S. W. (2d) 122; Riecke v. Anheuser-Busch Brewing Assn., 206 Mo. App. 246, 249, 227 S. W. 631; Counts v. Coca Cola Bottling Co. (Mo. App.), 149 S. W. (2d) 418; Jacobs v. Frank Adams Elec. Co. (Mo. App.), 97 S. W. (2d) 849.

 Is the manufacturer liable as plaintiff contends? In 7 Blashfield Cyc. of Automobile Law and Practice (Permanent Ed.), Sec. 4811, it is stated that "as a general rule, a manufacturer or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles handled by him; this rule being placed upon grounds of public policy." However, in Sec. 4812, Blashfield says that "under the rule of these later cases (cited in the text), the manufacturer of an automobile, the nature of which gives warning of probable danger if its construction is defective, who sells it to a dealer for the purpose of resale, is liable to a purchaser of the car from the dealer for its failure to exercise ordinary care in inspecting the wheels, brakes, or other parts of the machine, resulting in injury to such customer."

Huddy on Automobiles, Vol. 9-10, Sec. 210, after giving what is termed the general rule as to liability of the manufacturer, says that "the later and better considered cases hold that a manufacturer who places in trade and commerce a manufactured article, such as an automobile, which is not inherently dangerous to life or limb, but which may become so, because of its negligent construction, is liable to one who sustains injury by reason of such negligent construction. But the negligence of the manufacturer must appear by fair inference from proven facts, and not by mere conjecture."

Tayer v. York Ice Machinery Co., 342 Mo. 912, 119 S. W. (2d) 240, supra, was an action against the manufacturer of an ammonia compressor to recover damages for the death of plaintiff's husband, Milford Tayer, whose death resulted from an explosion of ammonia gas which escaped from a cracked compressor manifold. It was held that the negligence, if any, of the manufacturer, in manufacturing the manifold was not the proximate cause of Tayer's death, but in the opinion it was stated [119 S. W. (2d) l. c. 243] that "the legal obligation cast by the cases upon a manufacturer requires the exercise of due care in manufacturing and marketing merchandise imminently, intrinsically, inherently, or essentially dangerous in itself or when applied to its intended use."

We consider the Shroder case, infra, in disposing of plaintiff's contention respecting the liability of the dealer defendant who sold her the automobile.

The facts in MacPherson v. Buick Motor Co., 217 N. Y. 382, supra, are similar to the facts in the Johnson case, and it was held that the manufacturer was liable. The opinion in the MacPherson case was written by Judge Cardozo when a member of the New York Court of Appeals.

In Johnson v. Cadillac Motor Car Co. (2d Cir.), 261 Fed. 878, supra, it appears that the plaintiff purchased from a dealer a Cadillac car. He stored the car "for some months", and "after some little previous use of it", he was driving it 12 or 15 miles per hour on a public highway in good condition "when the front right wheel of the car suddenly and without any notice broke down"; the car turned over and the plaintiff was injured. The Cadillac Company did not manufacture the wheels, but purchased them from another company. It was held that the Cadillac Company was liable.

Olds Motor Works v. Shaffer, 145 Ky. 616, supra, was against the manufacturer of an automobile. Gardner and Colston bought the car from the defendant. The plaintiff, Lucy Shaffer, an invited guest, was riding in the rumble seat when the box on which the seat was fastened "split and cracked and fell", causing injury to plaintiff. It was held that the manufacturer was liable.

In Goullon v. Ford Motor Co. (6th Cir.), 44 Fed. (2d) 310, supra, the plaintiff purchased a tractor from a Ford dealer. "While driving the tractor backward and twisting about in his seat, the rim of the steering wheel broke in his hand, he fell from his seat, and was run over and injured." It was held (headnote 1) that the "manufacturer of article reasonably certain to imperil life and limb when negligently made, who knows article will be used without new tests by persons other than purchaser must make it carefully, irrespective of contract."

We agree with Blashfield and Huddy that the modern trend of decision is that the manufacturer of an automobile is liable to the ulti-

mate purchaser for injuries due to defects caused by negligence in its manufacture.

■ Is the dealer liable as plaintiff contends? As appears, supra, plaintiff cites many cases upon the proposition that the defendant dealer is liable to her under the facts alleged. It will not be necessary to review all these cases. The care required of an automobile dealer is stated in the Shroder case, supra. In that case Bernice Shroder sued to recover for personal injuries resulting from alleged defective brakes. It appears that the dealer's salesman, Baker, was trying to sell the Shroders an automobile; that he brought the car to them on Saturday so they could drive it. On Saturday evening Mr. Shroder drove the car about 10 miles, but did not remember using the brakes except in stopping. Sunday, the Shroders started with the car, Mr. Shroder driving, on a trip from Kansas City to Emporia, Kansas. In rounding a curve he put on the brakes and noticed that the car moved gradually to the left; "any time I would touch the brake it would just gradually pull over." Later, on the trip, the car collided with another and the brakes were accused. The verdict was for the defendant dealer; a new trial was granted, and the defendant appealed. The verdict for the defendant dealer was ordered reinstated, but in the opinion the liability of the dealer was considered as follows [111 S. W. (2d) l. c. 71]:

"It is true, of course, that defendant (a dealer) receiving new cars from the manufacturer, had some duty of inspection before selling them, and it should be charged with knowledge of what such inspection, as due care required, would disclose. Defendant, as a dealer in motorcars, and its employees, were familiar with the construction and operation of the cars made by the manufacturer whose products it sold. Its duty as to inspection, because of exclusive selling rights in certain territory under the well known system of manufacturers of motorcars (as well as the use of the cars that it should reasonably anticipate), would no doubt be greater than that of an ordinary retail merchant in the examination of less complicated articles of merchandise. This duty would undoubtedly require them to observe the cars as they received and operated them to see if they did not operate properly, to investigate the cause of any unusual condition apparent to them, and also to investigate the condition of and check the operation of parts or appliances, which they might reasonably expect (as a result of their experience and knowledge of these cars) would need attention before being delivered to purchasers."

So it appears that the law is that if an automobile dealer breaches his duty to inspect, as stated in the Shroder case, then he is liable to the purchaser for injury resulting from such breach of duty.

■ Is the res ipsa rule applicable as plaintiff contends? "The principal difference between a res ipsa loquitur case and a specific negligence case would seem to be that the very basis of liability, *the*

*existence of some negligence,* may be shown by a particular kind of circumstantial evidence, namely, an *unusual* occurrence of a character which ordinarily results only from negligence (both in pleading and proof), and from which, therefore, negligence is a reasonable inference; while in a specific negligence case the careless acts or omissions which constitute negligence must be stated and proven. In other words, in a res ipsa case the ultimate fact, *some kind of negligence* is inferred without any evidential facts except the unusual occurrence itself; while in a specific ▮▮▮ negligence case there must be evidential facts sufficient to show some negligent acts or omissions which were the proximate cause of the occurrence.'' Harke v. Haase, 335 Mo. 1104, 75 S. W. (2d) 1001, l. c. 1004.

▮▮ In Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S. W. 497, the action was against the manufacturer. The plaintiff's wife was in his butcher shop ''and while she was standing resting her right hand and arm upon a counter therein and exercising ordinary care for her own safety, a glass bottle containing defendant's said product, Budweiser, which said bottle and its contents had shortly prior thereto been manufactured by the defendant for sale to and use by the public, and placed by one Mrs. Phil Martin, the customer who bought said bottle of Budweiser, upon said counter a few feet from where plaintiff's wife was standing, as aforesaid, on account of and as a direct result of the negligence of the defendant, exploded'', and caused the injury complained of. Held that the res ipsa rule was applicable.

In Gordon v. Muehling Packing Company, 328 Mo. 123, 40 S. W. (2d) 693, the plaintiff was an employee of the defendant and was engaged in operating a sausage machine. The plaintiff had finished one job of sausage grinding and ''had stopped the machine and had removed and cleaned the worm and other parts, and was putting the same back in place; that, while he was adjusting the worm and fitting the end in the square socket with his hand in the hopper and hold of the worm for that purpose, such machinery being at rest, the same suddenly, unexpectedly, and in an extremely unusual manner, and without plaintiff's prior knowledge and without the black button being pressed, started in motion and commenced to operate, with the result that the revolving worm caught and crushed plaintiff's hand and wrist.'' Held that the res ipsa rule was applicable.

The facts in Tayer v. York Ice Machinery Corp., 342 Mo. 912, 119 S. W. (2d) 240, appear, supra. The res ipsa rule is considered at some length, but, as above stated, it was held that the defective manifold was not the proximate cause of the death of plaintiff's husband, and there was no ruling on the question as to whether the res ipsa rule was applicable.

In McLeod v. Linde Air Products Company, 318 Mo. 397, 1 S. W. (2d) 122, specific negligence was alleged, and the res ipsa rule was not involved.

Plaintiff, in Kelly v. Laclede Real Estate & Inv. Co. et al., 348 Mo. 407, 155 S. W. (2d) 90, was sitting on a box on the sidewalk and a piece of terra cotta fell from the building wall above and struck him. The defendants were landlord and tenant. Under the facts, it was held that the res ipsa rule was applicable.

In Garfinkel v. B. Nugent & Bro. Dry Goods Co. (Mo. App.), 25 S. W. (2d) 122, the plaintiff was in the defendant's store and while she was passing by a roll of linoleum standing on end it fell and struck her. Held that the res ipsa rule was applicable.

In Riecke v. Anheuser-Busch Brewing Assn., 206 Mo. App. 246, 227 S. W. 631, plaintiff, with others, at the defendant's invitation and under the guidance of an employee, went on a tour of inspection through defendant's plant and "while watching a girl employee of defendant place labels on bottles of Bevo, one of the bottles exploded", and injured plaintiff. Held that the res ipsa rule was applicable.

Counts v. Coca-Cola Bottling Co. (Mo. App.), 149 S. W. (2d) 418, was "an action for damages for personal injuries sustained by plaintiff, a counterman for the White Castle Company, when a bottle of Coca-Cola exploded in his hand while he was removing the bottle from a rack underneath the counter preparatory to placing it in the ice box." The defendant was manufacturer and distributor of Coca-Cola, from which "the particular bottle had been purchased by plaintiff's employer in the usual custom of the trade." Held that the res ipsa rule was applicable.

In Jacobs v. Frank Adams Elec. Co. (Mo. App.), 97 S. W. (2d) 849, plaintiff was injured while engaged in the installation of an electric panel board manufactured by the defendant and sold through a jobber. "As plaintiff prepared to energize the circuit in the cove, he took a position in front of the panel board at a point some 12 inches out from it and pressed the switch which was designed to distribute the current to the desired locality. The response was a loud explosion, and a flash from the board which extended out and temporarily blinded him, producing the injury to his eyes." The plaintiff "went upon ▮▮▮ the theory that defendant had been guilty of actionable negligence in having failed to properly insulate the parts of its panel board and in having delivered the same in that defective condition to be installed." So it appears that specific negligence was relied on and the res ipsa rule was not involved.

In Ford Motor Co. v. Wolber (7th Cir.), 32 Fed. (2d) 18, it was held that the res ipsa rule was not applicable (headnote 3) "to injuries to operator of farm tractor which tipped over and fell on operator, where tractor had been changed after it was put out by manufacturer by adding governor and setting it at maximum speed and adding additional set of wheels."

In 9 Blashfield's Cyc. of Automobile Law and Practice (Permanent Ed.), Sec. 5983, p. 204, is this: "The res ipsa loquitur rule will not

be applied to support a charge of defective manufacture of a motor vehicle in a suit brought by one who purchased it from a dealer, where the accident occurred a long time after the article was designed and manufactured and various changes and additions have been made.''

In the present case, according to the petition, plaintiff's automobile had been in use about two months and had been driven 1530 miles with no such occurrence except the one pleaded. In all the reported cases called to our attention and those we find by our own research, where the res ipsa rule has been applied, the instrumentality or thing complained of was generally in the possession and control of the defendant, except where bottles exploded. And the res ipsa doctrine 'is based in part upon the theory that the one in charge of an instrumentality which causes injury either knew the cause or has the best opportunity of ascertaining.

9 Wigmore On Evidence (2d Ed.), p. 377, Sec. 2509, of the res ipsa rule, says: ''What the final accepted shape of the rule will be can hardly be predicted. But the following considerations ought to limit it: (1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) both inspection and user must have been at the time of the injury in the control of the party charged; (3) the injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. It may be added that the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.''

''To make out a case for the application of this doctrine (res ipsa), the facts relied on ought to be such as reasonably to exclude all defensive inferences attributable by operation of law to the negligence of the plaintiff.'' Removich v. Bambrick Bros. Construction Co., 264 Mo. 43, l. c. 49, 173 S. W. 686.

To hold that the res ipsa rule is applicable under the facts alleged by plaintiff in the present case would be to extend the doctrine to situations to which it has not heretofore been considered applicable, and we do not think that it should be so extended, and so rule.

It appears from a memorandum, prepared by the trial court and printed in the brief of defendant General Motors Corporation, that the separate demurrers were sustained because specific negligence was not alleged. It also appears in the brief that there was a companion case against the present defendants filed by the present plaintiff's guest who was in the automobile at the time of the collision alleged here. Demurrers were sustained to the petition in the companion

case, and thereafter the plaintiff in that case, whose attorneys were the same as in the present case, amended to allege specific negligence.

The present petition, after the demurrers were sustained and plaintiff refused to plead further, was dismissed, and that action of the court we approve. However, in the interest of justice [Koerper et al. v. Glennon, 209 Mo. App. 489, 240 S. W. 260], the cause should be remanded with direction to the trial court to set aside the order of dismissal if plaintiff desires to proceed upon allegations of specific negligence, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur except *Hays, J.,* absent.