448

ELEANOR WENZEL, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 41825—235 S. W. (2d) 312.

Division One, December 11, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, January 8, 1951.

*Coburn, Storckman & Croft* and *Clem F. Storckman* for appellant.

*Everett Hullverson* for respondent; *Forrest Boecker* of counsel.

450

[313] VAN OSDOL, C.—Appeal from a judgment for $12,000 for personal injuries sustained by plaintiff when she was thrown from defendant's bus into the street just east of the intersection of Chippewa and Grand Boulevard in St. Louis. The jury by its verdict awarded plaintiff $17,500; however, the trial court required a remittitur of $5,500.

While minor questions are raised by defendant-appellant, the principal questions for consideration herein are—did the plaintiff plead, prove and submit a case to which the doctrine of res ipsa loquitur was applicable; and, if so, was the award of $12,000, after the remittitur, so manifestly excessive as to require further remittitur.

Plaintiff, respondent, at the time she was injured was 56 years old. She had lived apart from her husband for several years, and .was employed in a dry-cleaning establishment situate at Indiana and Pestalozzi Streets in St. Louis. She had been in good health. She earned $55 per week, $1.25 per hour "steady work," as the "main silk spotter" at her employer's plant. Her work "means handling quite a bit of chemicals, understanding the materials, and knowing what you have to do not to damage" the fabrics. ". . . you stand all the time . . .. You have to handle quite a big load of work at one time and you have to carry it from this place to another place."

Plaintiff resides at 3728 Keokuk Street, two blocks south of Chippewa. In going to her work, she customarily rode a Chippewa bus to Jefferson Avenue, thence to near the place of her employment by Jefferson northbound streetcar. The morning she was injured, plaintiff boarded the crowded Chippewa bus at Spring Avenue. She stood by the right front seat behind the "yellow line," and faced the front of the bus. She held on to the rod of the right front seat with her right hand, holding her purse and lunch bag in her left. Her position was about one step from the steps leading down to the entrance-exit front doors of the bus. There was a man (Kenneth Scherer) standing slightly in front of her and to her left, behind the bus driver.

[314] When the bus approached the west side of Grand Boulevard it was brought to a normal stop at the boulevard stop sign and procceded into Grand. The bus checked somewhat in passing over the streetcar tracks, and, when the bus approached the stopping place on the east side of Grand, "he came to an unusual, terrific stop which threw me forward and tore my grip loose, and out I flew." The doors "must have been open, because I went right out just that fast." Plaintiff landed in the street on her hands and knees, sustaining serious injury.

Kenneth Scherer testified that something caused the bus to be "checked sharply" in the middle of Grand Boulevard, then the bus "started forward again violently, and in approaching the curb it was checked rather sharply, and the motion was sort of a back-and-forward deal . . . it wasn't the normal type of bus stop." Anyone standing on a bus experiences swaying, but it was "not a normal sway in this instance; I mean there is something you expect and, well, this exceeded expectations, let us say. . . . I watched this thing, and as she went out, as the doors opened, I noticed the scenery outside was still moving slightly."

Plaintiff in her petition alleged "the said bus suddenly and violently and in a very unusual manner jerked, jarred and jolted and the front door thereof was caused to be opened, directly thereby causing plaintiff to be thrown from the said bus . . .." By Instruction No. 1, the trial court submitted plaintiff's case on the theory of res ipsa loquitur, hypothesizing the occurrence—"said bus suddenly and violently and in a very unusual manner, jerked, jarred and jolted and the front door thereof was caused to be opened while the bus was in motion."

Defendant-appellant contends that the instruction submitted general negligence by the hypothesis of a sudden and violent motion of the bus, and combined the submission of general negligence with a submission of specific negligence by hypothesizing "and the front door thereof was caused to be opened while the bus was in motion"; that plaintiff was not entitled to submit her case under the res ipsa

loquitur doctrine because she had undertaken to plead and prove specific negligence and the instruction submits, although defectively, specific negligence, and nevertheless permits an inference of negligence as in a res ipsa loquitur case; and that the instruction is erroneous as a submission of specific negligence because it fails to require a finding of a duty of defendant to keep the door closed in the circumstances. Furthermore, defendant-appellant says, no evidence supports the plaintiff's "conclusion" that the bus came to an "unusual, terrific stop."

The evidence tends to show that, as the bus came into the passenger zone on the east side of Grand Boulevard, the bus suddenly and violently jerked and the bus doors were caused to be opened. When the doors opened the bus was yet in motion. The sudden and violent movement of the bus apparently threw plaintiff forward; and, having gripped the rod of the right bus seat with her right hand, plaintiff was pivoted to the right and toward the bus door with such force as to break her "grip loose" and the unfortunate timeliness of the opening of the bus doors permitted plaintiff's "flight" right on out into the street. Such an occurrence (or combination of occurrences) "speaks" of "some kind of negligence" for which defendant should be held responsible.

As stated, the fact that the bus doors "were caused to be opened" was alleged in plaintiff's petition, and the fact that the bus doors were caused to be opened "while the bus was in motion" was hypothesized in the Instruction No. 1, supra. No direct evidence was introduced and there was no pleading and no submission of the specific act or omission which caused the bus to suddenly and violently jerk. And there was no direct evidence and no pleading and no submission that the bus driver opened the doors. Were the bus doors voluntarily opened by the bus driver, before the bus stopped, by the driver's premature manipulation of the device designed for opening the doors; or did the unusual movement of the bus cause the driver to come into inadvertent contact with the door-opening device so that the doors were opened before the bus stopped; or were the bus doors so mechanically defective that they were caused to be opened by the mere sudden and violent movement of the bus? It is true [315] plaintiff's counsel in cross-examining defendant's bus driver brought out that "you shouldn't open the doors before the bus stops"; and it should also be admitted that a bus should not ordinarily be brought to an "unusual, terrific stop"; yet, the cause or causes of these events remained in doubt. It is a fact that the bus doors were caused to be opened while the bus was yet in motion, because plaintiff went out "just that fast" and the bus was "still moving slightly." Plaintiff could and did only plead and submit such circumstances of the occurrence as she could and did demonstrate by evidence. Plaintiff did not see any "levers or anything" that

the bus driver manipulated when the bus was brought up with a "terrific jerk" and "the front door therof was caused to be opened." Plaintiff was not in a position to know, and the petition, the evidence and the instruction did not "spell out" the specific fault or faults causing the occurrence and plaintiff's consequent injury.

It seems to us that it might be considered an allegation or proof of specific negligence if a bus driver were alleged or shown to have opened or permitted bus doors to have remained open, in some circumstances, while the bus was in motion. Compare Meyers v. Wells, Mo. Sup., 273 S. W. 110; and examine Simmons v. Wells, 323 Mo. 882, 20 S. W. 2d 659. And it was an allegation of specific negligence to state that the "agents and servants of the defendant in charge of and operating said car" negligently caused or permitted the streetcar to start while plaintiff was "in the act of leaving said car and before plaintiff had stepped therefrom onto the street," in the case of Lammert v. Wells, 321 Mo. 952, 13 S. W. 2d 547, cited by defendant-appellant. Likewise, there was·a charge of specific negligence in stating " defendant, its agents and servants then and there in control of said car" negligently caused the streetcar to move in an unusual manner, without any warning, "while this plaintiff was in the act of alighting," in the case of Duggan v. St. Louis Public Service Co., Mo. App., 56 S. W. 2d 626, also cited by defendant-appellant. See Boulos v. Kansas City Public Service Co., 359 Mo. 763, 223 S. W. 2d 446, wherein this court, in considering this very question, discussed the Lammert, Duggan and other cases.

The case of Stubblefield v. Federal Reserve Bank of St. Louis, 356 Mo. 1018, 204 S. W. 2d 718, cited by defendant-appellant, differs from our case. In·the Stubblefield case, plaintiff alleged negligence in permitting a solid wooden wedge to fall from the cornice of a building then in process of repair, but further alleged and proved *specific negligence,* specific faults—omissions—failure to erect a covering, guard or barrier over the sidewalk to protect pedestrians from danger, and failure to warn of the attendant·danger, that is, the danger to pedestrians on the sidewalk from the falling of repair materials and debris to be reasonably anticipated as incident to the work of repairing the building. The pleading and proof of the specific negligent omissions precluded plaintiff from relying upon the inference of res ipsa loquitur which (but for the pleading or proof of the specific omissions) could have been drawn from the mere circumstance of the fall of the wedge.

Of course, where there is a submission of specific negligence, it is improper to also permit the jury to draw an inference of negligence under the doctrine of res ipsa loquitur. Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S. W. 2d 825. But where an

unusual occurrence is of a character which ordinarily results only from negligence and where, as herein, the circumstances peculiar to the occurrence point to no specific human fault, the inference of "some kind of negligence" as the cause is permissible under the res ipsa loquitur doctrine. Boulos v. Kansas City Public Service Co., supra; Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S. W. 2d 506; Mueller v. St. Louis Public Service Co., 358 Mo. 247, 214 S. W. 2d 1; Semler v. Kansas City Public Service Co., 355 Mo. 388, 196 S. W. 2d 197; Gibbs v. General Motors Corporation, 350 Mo. 431, 166 S. W. 2d 575; Harke v. Haase, 335 Mo. 1104, 75 S. W. 2d 1001.

Plaintiff and her witness Scherer were not wholly without experience as passengers on busses, and the description of the movement of the bus was not one wholly [316] within the field of expert testimony. Plaintiff lives in a great city served by passenger-carrier busses. The evidence tends to show plaintiff regularly traveled by bus part of the way to her work. She, of course, did not know she would be subjected to some extraordinary hazard on the way, and so she did not have an expert at hand to observe and to subsequently and expertly say just how the bus moved. Plaintiff did describe the movement as unusual and terrific; and the witness Scherer said the bus checked sharply on the streetcar tracks on Grand Boulevard, "started forward again violently," and checked sharply at the curb. It wasn't the normal type of bus stop. The language of plaintiff (and of the witness Scherer) in characterizing the occurrence was not materially unlike the language of nonexpert witnesses in the cases of Boulos v. Kansas City Public Service Co., supra; Meyers v. Wells, supra; Robert v. New York Central R. Co., Mo. App., 122 S. W. 2d 1; Crenshaw v. St. Louis Public Service Co., Mo. App. 52 S. W. 2d 1035. Moreover, the evidence tends to show the movement of the bus was of such force as to throw plaintiff out of the open bus door into the street. We think the circumstances of plaintiff's injury and the quoted testimony of the movement of the bus were sufficient to justify the submission of the res ipsa loquitur theory of plaintiff's case to the jury. Meyers v. Wells, supra.

As indicated supra, defendant-appellant contends the award of $12,000 after the remittitur of $5,500 is excessive.

After her injury plaintiff was taken to St. Anthony's Hospital. She was given anti-tetanus serum and a general "check up." X rays were taken. Her family physician, an able surgeon, testified plaintiff complained of pain in her left knee and in the small of her back. She was nervous and restless and somewhat in shock. X-ray photographs disclosed that plaintiff had a depressed fracture of the head of the left tibia. The outer side of the cup-shaped surface of the head of the bone was broken off down through the joint and

off to the side so that a large triangular piece of bone "from the middle downward was broken off and pushed down." The break went through the cartilage on the external side of the knee joint; and two tibial spines "that run up on the inside of the knee joint" were somewhat mashed. These spines are important because the crucial ligaments stabilizing the knee joint are attached to them. There was also a partial destruction of the crucial ligaments. Plaintiff's back was sprained. There was tenderness upon pressure in the lumbar region.

The doctor gave plaintiff a complete, general anaesthetic, and made an incision down over the central part of the "broken off" triangular piece of bone. Using a special instrument he had devised, the doctor forced the piece of bone back up into its normal position where it was held by the rough contacting surfaces. He then "put the leg in a plaster of Paris cast from the groin down over the toe, and kept it on for a period of two months, I think or something like that."

Plaintiff is treated by hot baths and massage daily. Her daughter-in-law assisted her in the bath for a time, but plaintiff can now bathe without assistance. She is still under the care of her physician. At night she is very restless, and her back and her leg get cramped. Now, at the time of trial, a little more than six months after her injury, plaintiff feels that she would be unable to carry on with her work. The pain and discomfort is a little less than "a month ago." Plaintiff's hospital, surgery and medical expense amounted to $395.50.

An X-ray photograph shows the fractured-off piece of bone is now "almost in a normal position," but the doctor said the damage to the soft tissue of the knee joint remains. When she moves her knee "it grates"—this is called "crepitation" and will persist in varying degrees throughout her life. Plaintiff has traumatic arthritis in the joint, and the knee is swollen. Her injury is permanent. She is unable to do the type of work she formerly did, "she could do it a short while but certainly not if she has to stand over periods of time and move about." The doctor was of the opinion plaintiff's knee would not greatly improve; her back condition will ultimately [317] clear up, but she will have some difficulty with her knee throughout her life. Some of the swelling will disappear, and even some of the disability. After the plaster cast was removed, plaintiff had used crutches for about a month. She now has to walk with a cane. Without her cane, plaintiff fell down a couple of times, "the knee gave away on me." The doctor thought that the use of a cane is necessary because of the loss of stability at the knee, and that plaintiff "probably should use a cane indefinitely."

Plaintiff has suffered serious, painful and permanent injury. She will have continued need for a physician's care and treatment.

As stated, she has already expended nearly $400 for surgery and hospitalization, and her loss of earnings at the time of trial was about $1,400. She was fortunate in having an approximate union of the fractured tibia, but she must endure the continued annoyance of the crepitation of the bones at the knee joint. The damage to the soft tissue remains. Her knee is unstable because of the broken cartilage and damaged ligaments and spines at the knee joint, making her uncertain in her poise of body and locomotion. She should continue the use of a cane. We cannot know if, or when and to what extent she will be able to resume her work.

Having the rule of reasonable uniformity of awards solely in mind, it would seem the award of $12,000 in the instant case is excessive, when the age, earnings, medical expense, and the nature and extent of injuries of plaintiff are compared with those of plaintiffs in the cases of Turner v. Central Hardware Co., 353 Mo. 1182, 186 S. W. 2d 603; Heitz v. Voss Truck Lines Co., Mo. Sup., 175 S. W. 2d 583; and Bowman v. Standard Oil Co., 350 Mo. 958, 169 S. W. 2d 384, cited by defendant-appellant. But prior decisions are advisory and not controlling on the question of the amount of awards in personal injury cases and, while a standard of uniformity should be kept in mind, each case presents its own problem. Hill v. St. Louis Public Service Co., 359 Mo. 220, 221 S. W. 2d 130; Schaefer v. Transamerican Freight Lines, Mo. Sup., 173 S. W. 2d 20; Colwell v. St. Louis-San Francisco R. Co., 335 Mo. 494, 73 S. W. 2d 222. The purchasing power of the dollar is to be considered in determining the question of the excessiveness of awards. Hill v. St. Louis Public Service Co., supra. And in the instant case the trial court passed directly upon the question of the excessiveness of the award, by requiring a remittitur of substantial amount, $5,500. The appellate court is usually reluctant to require a further remittitur after the trial court has directly passed upon the excessiveness of an award by substantially reducing the amount thereof. Orr v. Shell Oil Co., 352 Mo. 288, 177 S. W. 2d 608; Schaefer v. Transamerican Freight Lines, supra; Gieseking v. Litchfield & Madison R. Co., 344 Mo. 672, 127 S. W. 2d 700.

Having a regard for the principles governing the consideration of the question of excessiveness of an award, and considering the nature and extent of plaintiff's injuries and the amounts held allowable in the cases cited, we are constrained to believe it should not be held that the amount of the award in the instant case is excessive.

The judgment should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by Van Osdol, C., is adopted as the opinion of the court. All the judges concur.