WALTER R. ZESCH, Respondent-Appellant, v. THE ABRASIVE COMPANY OF PHILADELPHIA, Appellant, and PRODUCTION TOOL AND SUPPLY COMPANY, Respondent.—No. 39133.—183 S. W. (2d) 140.

Division One, November 6, 1944.

*John F. Evans* for appellant, The Abrasive Company of Philadelphia.

560

*Geo. F. Osiek* for respondent-defendant, Production Tool & Supply Company of St. Louis.

*B. Sherman Landau* for plaintiff-respondent.

VAN OSDOL, C.—Action by an employee against third persons (see Section 3699, R. S. 1939, Mo. R. S. A., sec. 3699; and Bunner v. Patti, 343 Mo. 274, 121 S. W. 2d 153) for $25,000 for personal injuries, the result of the "shattering" of an abrasive cutting-off wheel. The trial court sustained a demurrer to plaintiff's evidence as against Production Tool and Supply Company, defendant-respondent, vendor of the wheel—an involuntary nonsuit was taken as to that defendant. The jury returned a verdict for defendant-appellant, The Abrasive Company of Philadelphia, manufacturer of the wheel, but the trial court sustained a motion for a new trial. Plaintiff has appealed from an order overruling a motion to set aside the involuntary nonsuit; and defendant-appellant has appealed from the order granting the new trial.

It was specifically alleged by plaintiff that defendant-appellant was negligent in manufacturing the wheel in that it was not properly bonded and contained excess air spaces; and that both defendant-appellant and defendant-respondent were negligent in failing to inspect or test the wheel for defects. It was alleged by defendant-appellant that plaintiff was guilty of contributory negligence in using the wheel without a guard, and in failing to wear protective goggles.

Plaintiff, a tool and die maker, was injured while in the employ of the Sieber Loose Leaf Company of St. Louis, a manufacturer of loose-leaf binders. At plaintiff's request his employer had ordered an abrasive cutting-off wheel from the Banner Machine Tool and Supply

Company, who had no such wheel in stock but procured the wheel of defendant-appellant and delivered it to plaintiff. The wheel was six inches in diameter and one-sixteenth inch in thickness, and was designed for the purpose of cutting metal with its periphery or edge; it was not designed to sustain grinding pressure on its sides. The wheel exploded when being used by plaintiff in the shop of his employer in the performance of a grinding operation. The operation was being performed with a regular "Universal" grinder in grinding out .005 of an inch from the inside surface of a slot in a tool steel collet used for holding the wire from which screws were made for the binders manufactured by plaintiff's employer. The wheel was clamped upon a spindle of the grinder which spun the wheel at a spindle velocity of 4670 revolutions, or 7335.6 peripheral feet, per minute; and the collet was held by a milling vise bolted to an adjustable table which was so adjusted that the wheel was operated parallel with the surface of the slot which extended into the collet to the extent of three inches. Plaintiff did not attempt to grind out the full .005 of an inch of steel at the first cutting, but undertook to grind out .003 of an inch. The first grinding operation consumed about fifteen minutes, after which the plaintiff (in preparation for a second grinding to cut the remaining .002 of an inch) proceeded with two "cleaning" cuts to "take out the high spots" during which the collet was fed into the wheel without changing the relative positions of the slot and wheel. The first cleaning cut took about ten minutes. During the second cleaning cut, when the wheel had proceeded about one inch into the extent of the slot, the wheel "blew up," exploded; a portion of the wheel shattered the plaintiff's reading glasses, and a fragment or fragments of glass destroyed the vision of plaintiff's right eye.

If was the testimony of an expert witness that a wheel such as injured plaintiff is manufactured by binding (under heat) minute aluminum oxide crystals together by the use of a resinous binder. In the process of manufacture a tiny hole or pocket, or a collection of crystals which are not bonded, may be left within the composition of the wheel. Such a flaw is dangerous because the wheel, running at high speed, is subjected to "both a radial force and a circumferential or bursting force." A flaw may occur though there is the greatest care in the manufacture of the article. Such wheels are fragile; "are broken all the time by most of us"; and numerous factors can cause them to break.

It was the opinion of an expert witness that the wheel (in our case) "failed because of the progressive development of a flaw . . ." The wheel had been delivered to plaintiff a few days before the plaintiff sustained his injury. Upon receipt of the wheel plaintiff made a visual inspection, "flicked" it with his fingernail and, seeing no crack or gross imperfection and finding it to ring as if soundly made, placed it upon a nail over his workbench. The evidence

does not tend to show that there was a defective condition of the wheel which could have been discovered by pinging, or which could have been observed from the wheel's exterior appearance; and it was stated by the expert witness that a latent defect, or flaw, in the manufacture of the wheel could have been ascertained "only by testing the particular wheel to see whether it actually stands up under a higher speed than the one you intend to use it for." The witness had stated, "It is supposed to be rotated (in making a test) at 50 per cent greater than the speed of operation." During cross-examination the witness was confronted by Rule 10.2 of the American Engineering Standards Safety Code which provides,

"No wheels shall be operated at speeds exceeding 6,500 peripheral feet per minute, which have not been tested at a speed at ▮ least 50 per cent faster than the operating speed, with the following exceptions:

"b. Wheels less than 8-inch diameter where product of square of diameter by thickness in inches is less than 80, . . ."

It is clear that the wheel in the instant case was in size within the provided exception of the Code. No direct evidence was introduced tending to show whether there was or was not a custom among manufacturers to test cutting-off wheels (in size within the exception) by propelling such wheels at a rate in excess of that which they were to be propelled in use. Other facts will be noticed in the course of the opinion.

▮ Plaintiff (as appellant) has assigned error in refusing to set aside the involuntary nonsuit, it being urged that defendant-respondent, *a vendor,* is chargeable with the duty to exercise ordinary care in determining the suitability of a product for the use to which it is ordinarily applied, impliedly warranting the article sold to be free from a hidden defect, and want of knowledge of the defect will not relieve the seller. Defendant-respondent, Production Tool and Supply Company, asserts that a seller is under no obligation to test articles manufactured by others to discover hidden defects.

In the case of Shroder v. Barron-Dady Motor Co. (Mo. Sup.), 111 S. W. 2d 66, this court observed generally the distinction between the liability of the manufacturer and the liability of the vendor of chattels, and particularly ruled upon the question of the duty of a vendor to make tests for latent defects in the article sold. Said the court (111 S. W. 2d at page 70), "'. . . The seller is under no obligation to test articles manufactured or packed by others for the purpose of discovering latent or hidden dangers.' 24 R. C. L. 509, sec. 802." Relating to the care required of a vendor, the court quoted sec. 402, Vol. II, Restatement of the Law of Torts, "A vendor of a chattel manufactured by a third person is subject to liability . . . if, although he is ignorant of the dangerous character or condition of the chattel, he could have discovered it by exercising reasonable

care to utilize the peculiar opportunity and competence which as a dealer in such chattels he has or should have." Should a retail or wholesale vendor have an opportunity to observe conditions which as a competent dealer in such commodities should cause him to realize that the goods are or are likely to be in any condition dangerous for use, "His failure to inform his vendees that the goods are or are likely to be dangerous is not excused by his ignorance thereof, if his ignorance is due to his failure to utilize his special opportunities and exercise his special competence for the purpose of discovering whether the goods are or are not safe for the use for which they are sold." Comment a, Vol. II, Restatement of the Law of Torts, sec. 402. See also Gibbs v. General Motors Corporation, 350 Mo. 431, 166 S. W. 2d 575.

The evidence does not tend to show that defendant-respondent undertook to furnish the cutting-off wheel for a particular special purpose, as distinguished from the ordinary use of the wheel, and that plaintiff was relying upon the judgment of defendant-respondent that the wheel was suitable for the particular special purpose. Absent such a showing there was no implied warranty of the suitability of the article sold. State ex rel. Jones Store Co. v. Shain et al., 352 Mo. 630, 179 S. W. 2d 19. A vendor has been subjected to liability when he should have known an article when used under certain conditions would be dangerous, and could have reasonably anticipated such use. See Arnold v. May Department Stores Co., 337 Mo. 727, 85 S. W. 2d 748, cited by plaintiff-appellant.

Defendant-respondent, Production Tool and Supply Company, a vendor, could not have discovered the flaw by an exterior inspection, or by a test by sounding, and there was nothing shown in evidence which should have caused a vendor to have realized that the wheel was unsafe for use. Defendant-respondent had no duty, under the facts, to subject the wheel to a rigid inspection or test for a latent flaw. Shroder v. Barron-Dady Motor Co., supra; Vol. II, Restatement of the Law of Torts, Comment a, sec. 402. We hold that the trial court correctly ruled in overruling the motion to set aside the involuntary nonsuit.

■ Now, addressing the contentions of defendant-appellant—the trial court specified errors in the giving of Instructions Numbers 2, 3 and 4 (given at the instance of defendant-appellant) as grounds for granting the new trial. It is contended by defendant-appellant that the trial court erred in granting a new trial upon the specified ground of error in instructing the jury; ■ and, further, that plaintiff-respondent did not make out a submissible case against defendant-appellant. If plaintiff failed to make out a submissible case against defendant-appellant, plaintiff should not have a new trial, although there was possible error in the giving of instructions. Hendricks et al. v. Weaver et al., 352 Mo. 848, 183 S. W. 2d 74, decided concurrently

herewith; Shroder v. Barron-Dady Motor Co., supra; United Const. Co. v. City of St. Louis, 334 Mo. 1006, 69 S. W. 2d 639.

Plaintiff-respondent makes no contention that a submissible case was made against defendant-appellant of negligence in the manufacture of the wheel, and the case was submitted by the trial court hypothesizing specific negligence of defendant-appellant in failing to make a proper test to ascertain a defective condition of the wheel. It is asserted by defendant-appellant that the evidence on the issue of negligent failure to make a test would require the jury to indulge in speculation and conjecture in order to arrive at a verdict for plaintiff.

There was no direct evidence that the defendant-respondent made no proper test to determine if there was a flaw in the wheel, so it must be seen that, to answer the question of whether there was a submissible case of negligence in failing to make a test, it is necessary to determine if the failure to make the test could have been reasonably inferred. A test by which the wheel was run at a rate of speed in excess of that which it would be run in use could have disclosed a flaw, according to the expert witness, and in his opinion a flaw caused the wheel to fail. We should determine if there was substantial evidence factually of the existence of a flaw in the wheel, before the negligent failure to make the test could be reasonably inferred. See Van Brock v. First Nat. Bank in St. Louis, 349 Mo. 425, 161 S. W. 2d 258; Wills v. Berberich's Delivery Co., 345 Mo. 616, 134 S. W. 2d 125; Morris v. E. I. DuPont de Nemours & Co., 341 Mo. 821, 109 S. W. 2d 1222; 95 A. L. R. 162; 27 W. L. Q. 130.

There was no direct evidence that the wheel contained a latent flaw. A microscopic examination of those (some) fragments of the wheel presented to the expert disclosed no indication of a flaw; and numerous factors could have caused the wheel to break. However, viewed from a standpoint most favorable to plaintiff, the evidence tends to show that the grinding machine was in order; the wheel was nicely clamped upon the spindle; the wheel was being operated at a rate below its maximum rated speed; the collet was firmly screwed in the milling vise which was rigidly fixed upon the table of the grinder; the "end play" of the spindle was not too great; the wheel was made for the purpose of cutting with its edge; the grinding was being done with the edge of the wheel; although the side of the wheel during the operation was in "contact" with the steel of the collet, the grinding was being done with the edge or periphery of the wheel and there would be no side pressure on the wheel unless the operation were being performed by a novice; the plaintiff was an experienced tool and die maker; evidence tends to negative the possibility that the wheel had been cracked or damaged by a blow or by careless handling prior to its use by plaintiff; the wheel broke in its early use. This evidence,

in our opinion, is substantial, circumstantially, that a flaw existed in the composition of the wheel.

It is contended by defendant-appellant that, ''Evidence that a flaw in an abrasive wheel could have been discovered by a certain special test did not convict the manufacturer of negligence, in the absence of any evidence that this test was recognized or used by manufacturers of abrasive wheels in the exercise of ordinary care.'' The cases of Wommack v. Orr, 352 Mo. 113, 176 S. W. 2d 477; Schaum v. S. W. Bell Tel. Co., 336 Mo. 228, 78 S. W. 2d 439; Brands v. St. Louis Car Co., 213 Mo. 698, 112 S. W. 511; Chrismer v. Bell Tel. Co., 194 Mo. 189, 92 S. W. 378; Minnier v. Sedalia, W. & S. W. R. Co., 167 Mo. 99, 66 S. W. 1072, are cited in support of the contention. These cases involve the question of the standard of care of masters. Usage is of more import in determining the gauge of care of a master than of persons in some other relations—this may be due in some measure to the rule of the law of master and servant that the servant assumes the ordinary risks of his work. See 68 A. L. R. 1416; 35 Am. Jur., Master and Servant, sec. 124. Ordinary risks are those risks of injury incidental to the business, other than the risks arising from the negligence of the master; and the test of negligence of the master in his methods, machinery and appliances █ has been said to be the ordinary usage of the business. Schaum v. S. W. Bell Tel. Co., supra. Defendant-appellant has also cited the case of McClaren v. G. S. Robins & Co., 349 Mo. 653, 162 S. W. 2d 856; in that case it was the contention of the plaintiff that defendant was negligent in selling carbon tetrachloride without the warning word ''poison'' thereon in violation of a penal statute of the State of Illinois. This court held that carbon tetrachloride was not a drug, and not of the kind or class of substances mentioned in the statute; and that the warning used by defendant, ''Volatile Solvent, use with adequate ventilation. Avoid prolonged breathing of vapor'' had been adopted by manufacturers of this product. The plaintiff's decedent met his death by breathing fumes of the product while working inside the ''cased-in'' preheater of a boiler. The evidence showed that there was no danger in using this product except in a confined unventilated place. The plaintiff's decedent was apparently warned of the very property of the product which, under the facts, caused his death. This case is not authority for a contention that a seller (or a manufacturer) could not have been subjected to liability if a warning of the dangerous property (which had caused an injury) of the product sold (or manufactured) had not been printed upon the cans containing the product, although the plaintiff had failed to show that it was the custom of other sellers (or manufacturers) of carbon tetrachloride to use a similar warning label.

Often no other evidence, of what is a reasonably safe method of conducting the complicated work of modern industry, is available

except the methods tested by usage in similar work. But due care is exercised by taking precautions commensurate with the dangers which should be apprehended. A usage, even of masters, cannot make a practice which is inherently unreasonably dangerous the standard of care. Schaum v. S. W. Bell Tel. Co., supra. And generally it is held, where the relation of master and servant is not involved, that usage may be sometimes properly considered, but it is not conclusive, as a standard of care. 68 A. L. R. 1401; State ex rel. Elliott's Department Store Co. v. Haid, 330 Mo. 959, 51 S. W. 2d 1015; Olds v. St. Louis Nat. Baseball Club (Mo. App.), 119 S. W. 2d 1000.

It is said that if the nature of a thing manufactured is such that, when lawfully used for the purpose for which it is manufactured, it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger and the manufacturer of this thing of danger is under a duty to make it carefully. McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S. W. 2d 122; Jacobs v. Frank Adams Electric Co. (Mo. App.), 97 S. W. 2d 849; McPherson v. Buick Motor Co., 217 N. Y. 382; Vol. II, Restatement of the Law of Torts, sec. 395. And given an article which may contain a latent imperfection making the article reasonably certain to be a thing of danger (though it is carefully manufactured), where it is shown that the imperfection could be disclosed by a test, it would seem reasonable that the manufacturer in the exercise of ordinary care would be under a duty to make the test.

■ We cannot follow the argument of defendant-appellant that the plaintiff-respondent's case must fail because there was no evidence that defendant-appellant, or other manufacturers of abrasive wheels, possessed the necessary equipment to perform the test. The necessary equipment for such a test would require no more than the installation of an instrumentality which would rotate the wheel at the necessary high rate of speed.

■ We rule that plaintiff made out a submissible case against defendant-appellant.

■ As stated, the trial court sustained the motion for a new trial upon the specified ground of error in instructing the jury; and error was specified by the trial court in the giving of three instructions, Numbers 2, 3 and 4, at the instance of defendant-appellant. Instruction Number 2 is as follows,

"You are instructed that under the law of this case the defendant, The Abrasive Company of Philadelphia, did not insure plaintiff against the breakage of the wheel mentioned in the evidence, and would not be liable to plaintiff merely because said wheel broke. Before you can find and return a verdict against The Abrasive Company of Philadelphia you must find and believe from the preponderance of greater weight of all the credible evidence that plaintiff was caused to be injured as the direct result of some act of negligence on the part

of said defendant, as such negligence ▉▉▉ is defined and set out in other instructions, and unless you do so find your verdict should be for defendant, The Abrasive Company of Philadelphia.

"In determining the issue of negligence you cannot presume that the defendant was negligent merely because the wheel broke while being used by plaintiff, and your verdict cannot be based on mere speculation or conjecture but must be arrived at on the basis of the preponderance or greater weight of the credible evidence."

This instruction, cautionary and somewhat abstract, was considered by the trial court to be prejudicially erroneous and we are mindful that the trial court has wide discretion in passing on a motion for a new trial and that, where the motion is sustained, the appellate court will be liberal in upholding the trial court's action. Hoepper v. Southern Hotel Co., 142 Mo. 378, 44 S. W. 257. In the case at bar the jury might have reasonably inferred that defendant was negligent in failing to make a proper test. The fact that the wheel exploded was a fact which plaintiff was entitled to have the jury consider in conjunction with other facts shown in evidence in passing upon the ultimate question of liability. The instruction appears to correctly state principles in the abstract. Assuredly the jury was properly instructed, in effect, that plaintiff's recovery was dependent upon proof of negligence of defendant-appellant, but the jury was so cautioned by a threefold admonition, twice by singling out a fact (the breaking of the wheel) which the jury could consider, in conjunction with other evidence, as tending to prove the negligence submitted; the jury was further cautioned against returning a verdict based upon mere speculation and conjecture—in a case in which liability must necessarily be based, in part, upon circumstantial evidence. See Reynolds v. Maryland Casualty Co., 274 Mo. 83, 201 S. W. 1128; and Raymond on Instructions, Vol. 1, sec. 128. Defendant-appellant has cited the cases of Steinmetz v. Nichols, 352 Mo. 1047, 180 S. W. 2d 712; Mueller v. Schien, 352 Mo. 180, 176 S. W. 2d 449; Lewis v. Zagata, 350 Mo. 446, 166 S. W. 2d 541; Dove v. Atchison, T. & S. F. R. Co., 349 Mo. 798, 163 S. W. 2d 548; and Gardner v. Turk, 343 Mo. 899, 123 S. W. 2d 158, in support of its contention that the trial court erred in granting a new trial upon specified error in giving the instruction. In these cases the trial courts had overruled the motions for new trial or, in sustaining the motions for new trial, did not specify (as grounds for sustaining the motions) errors in the giving of the particular instructions considered, and this court upheld the trial courts' discretion in giving the instructions. The giving or refusal of cautionary instructions is largely within the discretion of the trial court. Lewis v. Zagata, supra; Gardner v. Turk, supra. Apparently the trial court in the instant case, in considering the motion for a new trial, believed Instruction Number 2 to have been prejudicially repetitious and misleading in view of the circumstantial

character of plaintiff's evidence. We uphold the trial court's action in sustaining the motion for a new trial as being within the trial court's sound discretion.

We shall not prolong this opinion by reviewing the trial court's action in sustaining the motion for new trial upon the specified grounds of error in the giving of Instructions 3 and 4. Counsel of the respective parties now have the benefit of respective counsel's contentions and errors in these two instructions, if any there are, may be avoided upon a new trial.

The trial court's order sustaining the motion for a new trial should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.