Louis LESSER et al., Appellants,

v.

WILLIAM HOLLIDAY CORD ASSOCI-
ATES, INC., Appellee.

WILLIAM HOLLIDAY CORD ASSOCI-
ATES, INC., Appellant,

v.

Louis LESSER et al., Appellees.

Nos. 17774, 17788.

United States Court of Appeals
Eighth Circuit.

Aug. 3, 1965.

Rehearing Denied Aug. 30, 1965.

John A. Biersmith, of Rafter, Bier-
smith, Miller & Walsh, Kansas City, Mo.,
Charles T. Rafter, Jr., of Rafter, Bier-
smith, Miller & Walsh, Kansas City, Mo.,
for Louis Lesser et al.

Lyman Field, of Rogers, Field & Gen-
try, Kansas City, Mo., for William Holli-
day Cord Associates, Inc.

Before VAN OOSTERHOUT, BLACK-
MUN, and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

These are cross appeals, in a diversity
tort suit, from a judgment for $7,019.62
entered in favor of the plaintiffs, Louis
Lesser and others, and against the de-
fendant, William Holliday Cord Asso-
ciates, Inc. The judgment rests upon
negligent misrepresentation. The plain-
tiffs' appeal is directed to the amount of
the judgment, for it claims that it should
be in excess of $900,000. The defend-
ant's appeal is directed to liability, that
is, to the entry of any judgment against
it at all.

The facts are not in any real dispute.
The plaintiffs are a joint venture known
as D & L Construction Company and

Associates. In August 1959 D & L, as general contractors, executed an agreement with the United States for the construction of 700 units of military housing at Fort Leonard Wood, Missouri.[1] D & L thereafter entered into negotiations with Atlas Excavators, Inc., for the performance, through subcontract, of substantial preparatory work on the site.

The defendant Cord was a general insurance agency. Joseph G. Howard was its vice-president. Atlas had written insurance through Howard and Cord for some time. About September 1, 1959, Howard and the president of Atlas came to the Fort and there met with representatives of D & L. Howard was introduced as the bonding agent for Atlas. A performance and payment bond from Atlas was discussed. On September 8 Howard sent the following telegram to the plaintiffs:

> "We are the insuring agency for Atlas Excavators, Inc., Union, Missouri. We will be able to execute a performance bond in the amount of $1,280,000.00 upon receiving notification that the contract has been awarded. Necessary certificates for workmen's compensation fleet and comprehensive general liability in the mail.
>
> William Holliday Cord Associates, Inc.
> per J. G. Howard V P"

No question is raised as to Howard's authority to act for Cord in this respect.

At the time the telegram was sent, Cord had not received assurance from any surety company that it was willing to execute a bond of this kind and amount for Atlas.

Four days later, on September 12, D & L entered into a subcontract with Atlas for the site work at a lump sum contract price of $1,280,000. This required

Atlas at its expense to furnish a performance and payment bond with good and sufficient sureties and in an amount not less than the full contract price, "which bond must be satisfactory to [D & L] and submitted by September 22, 1959".

No bond, however, was furnished by Atlas by September 22 or at any time. Nevertheless, Atlas moved onto the site about that date and began its work. It continued on the jobsite until November 22, 1960, a period of over a year, when it was terminated by D & L for default. D & L then made other arrangements for the completion of Atlas' work. The result was that the work cost $911,430.21 in excess of Atlas' contract price.

D & L instituted this suit for loss it claims to be attributable to the misrepresentation contained in the telegram of September 8, 1959.[2] The case was tried to the court. In advance of trial the court rendered an opinion on the question whether a negligent misrepresentation resulting in only pecuniary damage, as distinguished from bodily injury, was actionable in Missouri. It noted that there was no privity of contract between D & L and Cord. But it also noted that the statement in the telegram was intended for the information of D & L; that Cord would benefit, by commissions, from action which it had reason to believe would be induced by the statement; and that "the Missouri law probably would be that such a negligent misrepresentation is an actionable tort".

In a subsequent memorandum, filed after the main portion of the trial had taken place, the court reiterated its holding that Cord was liable to D & L for damage arising from the negligent misrepresentation contained in the telegram. It went on to hold, however, that Cord's liability was not the $911,430.21 dif-

---

1. See Continental Cas. Co. v. Allsop Lumber Co., 336 F.2d 445, 447–448 (8 Cir. 1964), cert. denied 379 U.S. 968, 85 S. Ct. 662, 13 L.Ed.2d 561.

2. Although the complaint as originally filed was in two counts, one based upon negligent misrepresentation and the other upon fraud, the latter was abandoned by the plaintiffs and the case was submitted only on the theory of negligent misrepresentation.

ference between ultimate cost and the contract price; that, by allowing Atlas to proceed with the work, although no bond had been presented by September 22, D & L had waived the requirement of a bond; that any damages which accrued after that date were not proximately caused by the misrepresentation; and that the only damages recoverable were those sustained between September 8, the date of the telegram, and September 22. The court then invited evidence as to these damages. After additional testimony was presented, the court made its "Judgment Entry" to the effect that the negligent misrepresentation of Cord occasioned a delay of ten days (presumably from September 12, the date of the contract, to September 22) "in the completion of the project" and that plaintiffs were entitled to recover one-third of the project's interest and "indirect costs" for the month of September 1959. This amount, according to the court's calculations, was $7,019.62.

Our initial concern is with Cord's appeal and the issue of its liability. Cord emphasizes that there existed between it and D & L no confidential, contractual, or fiduciary relationship. It challenges the trial court's conclusion that, even though such a relationship is absent, liability can exist under Missouri law for a misrepresentation negligently but not fraudulently made.

Cord recognizes the development of the so-called modern exceptions to the old rule of non-liability where there is no privity of contract. In particular, it recognizes MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A.1916F, 696 (1916), where, in an opinion by the then Judge Cardozo, the Court of Appeals of New York upheld, apart from privity, liability in tort for bodily injury not only when a manufactured article is inherently dangerous but when it is reasonably likely to be dangerous if negligently made. Cord goes even further and acknowledges the acceptance of the MacPherson doctrine in Missouri. But Cord then points out that the New York court in the later case of Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 447, 74 A.L.R. 1139 (1931), again speaking through Judge Cardozo, refused to impose liability on accountants for economic loss due to negligence, short of fraud, in their certification of a balance sheet exhibited to creditors and investors by the one for whom the statement was made. It is then claimed that there is no Missouri decision which holds otherwise.

Missouri has indeed adopted the MacPherson rule as to bodily injury with sufficient specificity so that we have no doubt about its application in that state to appropriate facts. Stevens v. Durbin-Durco, Inc., 377 S.W.2d 343 (Mo.1964); Zesch v. Abrasive Co., 353 Mo. 558, 183 S.W.2d 140, 145, 156 A.L.R. 469 (1944); McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.2d 122, 124–126 (1927); Stolle v. Anheuser-Busch, Inc., 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001 (1925); Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc., 317 S.W.2d 841, 844 (Mo.App.1958); Riggin v. Federal Cartridge Corp., 240 Mo.App. 206, 204 S.W.2d 94, 99 (1947); Roettig v. Westinghouse Elec. & Mfg. Co., 53 F. Supp. 588, 590–592 (E.D.Mo.1944).

However, Missouri's imposition of liability, in the absence of privity, for a merely negligent misrepresentation and economic loss is perhaps not authoritatively settled. Cases of several decades ago, as was to be anticipated for that period, did reach negative conclusions. Schade v. Gehner, 133 Mo. 252, 34 S.W. 576, 577 (1896); Zweigardt v. Birdseye, 57 Mo.App. 462 (1894); Gordon v. Livingston, 12 Mo.App. 267 (1882). Counsel tell us that they have found no Missouri case subsequent to MacPherson which touches upon this aspect of the absence-of-privity situation.[3] Our own investiga-

---

3. In November 1963 Division One of the Supreme Court of Missouri filed an opinion in Motley v. Mercantile Trust Co., No. 49879, rejecting privity as a necessary element in a negligent misrepresentation case against a trust company. The case was settled prior to hearing by the court en banc. It is not reported. The

tion is no more fruitful. Confronted by this state of the Missouri decisions and by the widening acceptance and application of the MacPherson approach elsewhere, the trial court was reluctant to say that Schade v. Gehner still represented Missouri law. Instead, it concluded that the present law, if the state courts were called upon to announce it, would be in accord with what is said in Restatement, Torts, § 552 (1938),[4] and in 65 C.J.S. Negligence, § 20, p. 428 (1950).[5] It then delineated and found existent here the necessary facts and conditions for liability spelled out by these authorities.

We conclude, however, that we need Schade v. Gehner, a case almost 70 years old, represents with certitude the Missouri law today or that the trial court's conclusion was not a permissible one with which we could justifiably disagree. Homolla v. Gluck, 248 F.2d 731, 733–735 (8 Cir. 1957); Merrick v. Allstate Ins. Co., 349 F.2d 279 (8 Cir. 1965).

We, too, would be reluctant to say that not decide whether the trial court was or was not correct in its analysis of the Missouri law. For purposes of the present case we assume that the court was right and that liability does exist in Missouri, upon appropriate facts, for economic loss due to negligent misrepresentation. But this assumption does not of itself lead to liability here on the part of Cord to D & L.

■■ The subcontract, as has been noted, provided that Atlas at its expense should provide the performance and payment bond by September 22, 1959. A requirement of this kind in a construction contract may, of course, be waived. Campbell v. Richards, 352 Mo. 272, 176 S.W.2d 504, 505 (1944); Brown v. George, 260 S.W.2d 836, 839 (Mo.App. 1953); Pierce v. Wright, 117 Cal.App. 2d 718, 256 P.2d 1049, 1051 (1953); Smither & Co. v. Calvin-Humphrey Corp., 232 F.Supp. 204, 206 (D.D.C.1964); Corbin, Contracts, § 756, p. 504; 17A C.J.S. Contracts § 491b, p. 691 (1963). We feel, as did the trial court, that, by permitting Atlas to come upon the jobsite after September 22 without the submission of the performance and payment bond, D & L waived the subcontract's requirement that the bond be furnished. Justified reliance upon Cord's misrepresentation ceased at that point. As a consequence, no damages for the period subsequent to September 22 were caused by the misrepresentation and Cord has no

parties concede that, because of this, the opinion is not controlling precedent. We accept this characterization of the opinion but refer to it in this footnote for what interest its unreported presence affords.

4. "§ 552. Information negligently supplied for the guidance of others.

"One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if

"(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and

"(b) the harm is suffered

"(i) by the person or one of the class of persons for whose guidance the information was supplied, and

"(ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith."

5. "A false statement negligently made may be the basis of a recovery of damages for injury or loss sustained in consequence of reliance thereon, the American rule, in this respect, being more liberal than the rule in England. In order that such liability may exist, it is necessary that the relationship of the parties, arising out of contract or otherwise, be such that one has the right to rely on the other for information, that the one giving the information should owe to the other a duty to give it with care, that the person giving the information should have, or be chargeable with, knowledge that the information is desired for a serious purpose, that the person to whom such information is given intends to rely and act on it, and that, if the information given is erroneous, the person to whom it is given will be likely to be injured in person or in property as a result of acting thereon." [footnotes omitted]

liability for that period. We understand, in view of record statements by plaintiffs' counsel to the trial court, that D & L does not disagree with this conclusion.

■ This takes us to the question of damages for the period prior to September 23. The trial court determined that such damages did exist, that they arose from a 10-day delay in the completion of the project, and that they constituted one-third of the project's September 1959 interest and indirect costs incurred by the plaintiffs. D & L on its appeal claims that this is not the proper measure of its damage; that, instead, it is entitled to the "benefit of its bargain"; and that this benefit is the sizeable difference between the Atlas subcontract price and the actual cost of the work. The defendant, on the other hand, asserts that for the period prior to September 23 no damages attributable to the misrepresentation were proved; that none of the plaintiffs' indirect costs were chargeable to Atlas; that on the record no more than nominal damages could be awarded; and that, under the court's own theory, the indirect costs were overstated anyway.

We fail to follow this portion of the trial court's reasoning. The subcontract provided that Atlas' bond be "submitted by September 22". Until that date passed there could be no damage attributable to Cord's misrepresentation in the telegram of September 8. During the period beginning September 12 and ending September 22 Cord's representation, although negligently made, could still have been fulfilled. There was no delay, before September 23, occasioned by the bond's absence and, so far as the record discloses, Atlas, with the plaintiffs' consent, moved in promptly after that date and proceeded to get the work under way. Prior to September 22 there was no consequence of the bond's absence and no causal effect, by way of damage to D & L, of Cord's failure to produce.

Thus, even if we assume that liability may exist under Missouri law for a negligent misrepresentation of the kind with which we are here concerned, we end up with no liability on the part of Cord for the period after September 22, 1959 (because of D & L's waiver and the consequent absence of reliance by it on the misrepresentation), or for the prior period (because the bond was not then overdue). The requisite for liability here ·is causation. But causation is absent.

The judgment in favor of the plaintiffs is vacated and the case is remanded with instructions to enter judgment for the defendant.